IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Gainesville

NOV 13 2008

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| JOHN BAGNATO, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 1:08-CV-2114-JOF-SSC |
| PHOEBE PUTNEY HEALTH SYSTEM, INC., PHOEBE PUTNEY MEMORIAL HOSPITAL, INC., JOEL WERNICK, LANGLEY AND LEE, LLC, CARL RICHARD LANGLEY, LARRY J. MCCORMICK AND ASSOCIATES, LLC, LARRY J. MCCORMICK, WORK DYNAMICS, INC., STEPHEN B. CHENOWETH, JOHN DOES NO. 1 THROUGH V, ABC CORPORATION, and XYZ CORPORATION, | |
| Defendants. | |

**ORDER**

This matter is before the court for consideration of "Certain Defendants' Motion to Quash Third-Party Subpoena Issued to Charles Hayslett and/or Motion for Protective Order" [Doc. 1]. For the reasons discussed below, the motion to quash is **GRANTED in part and DENIED in part**.

**Procedural History**

Defendants Phoebe Putney Health System, Inc., Phoebe Putney Memorial Hospital, Inc., Joel Wernick, Langley & Lee, LLC and Carl Richard Langley ("Defendants") have filed a motion, pursuant to Fed.R.Civ.P. 45, to quash a subpoena *duces tecum* that was served by Plaintiff John Bagnato ("Plaintiff") on

Charles Hayslett, a non-party resident of the Northern District of Georgia.[1] [Doc. 17]. In the alternative, Defendants seek a protective order pursuant to Fed.R.Civ.P. 26. Defendants' motion arises out of a lawsuit filed by Plaintiff against Defendants in the United States District Court for the Middle District of Georgia, Civil Action No. 1:07-CV-000030-WLS (see Def. Ex. D). In that lawsuit, Plaintiff, who is a member/partner in Albany Surgical P.C., alleges that he "authored several anonymous facsimiles [referred to as "Phoebe Factoids"] concerning matters of public interest and concern from September, 2003 through March, 2004." (See Amended complaint, Def. Ex. D, ¶¶ 20, 36-37; see also Def. Ex. C).[2] Plaintiff alleges that the Factoids "provided the community of Albany, Dougherty County, Georgia, with information on, among other things, irresponsible and improper conduct by those controlling and directing Defendants PPHS [Phoebe Putney Health System, Inc.] and PPMH [Phoebe Putney Memorial Hospital, Inc.]–a hospital entrusted with public funds." (Amended complaint, ¶ 21). Plaintiff further alleges that Defendants PPHS, PPMH, Wernick, Langley & Lee and Langley employed private investigators, Defendants McCormick, Chenoweth, Work Dynamics and McCormick & Associates, in an effort to identify the authors of the Factoids. (Id. at ¶ 23).

Plaintiff alleges that Defendants engaged in a variety of wrongdoing with respect to Plaintiff and Charles Rehberg (who also worked for Albany Surgical) in

---

[1]Defendants Larry J. McCormick, Larry J. McCormick and Associates, LLC, Work Dynamics, Inc. and Stephen Chenoweth are not parties to the instant motion.

[2]The "Factoids" are also called "Phactoids." (See Def. Ex. C).

their attempts to learn the identities of the authors of the Factoids, including retaliating against them. (See generally Amended complaint, ¶¶ 23-57). These alleged actions included: giving false information to the District Attorney ("DA") in order to solicit the DA to investigate the Factoids and using information obtained during that investigation to investigate Plaintiff and Rehberg; sending "fraudulent" e-mails to the Albany Surgical computer and obtaining the content of e-mail communications between Plaintiff and other persons and disclosing the content to others; filing (and then dismissing) a lawsuit against Rehberg and others "for authoring and disseminating the information contained in the Phoebe Factoids"; seeking and obtaining three separate indictments (which were dismissed) against Plaintiff for harassing phone calls, aggravated assault, burglary and simple assault. (See id. at ¶¶ 26-35, 40-46, 49-57). Plaintiff asserts the following claims against Defendants: retaliation for speech on matters of public concern in violation of 42 U.S.C. § 1983 (Count I); disclosure and use of telephone communications in violation of 18 U.S.C. § 2511 (Count II); malicious prosecution (Count III); identity fraud (Count IV); violation of the Georgia Computer Systems Protection Act (Count V); Georgia RICO Act violations (Count VI); Georgia constitutional claims (Count VII); and punitive damages (Count VIII).

On March 17, 2008, Plaintiff served on non-party Charles Hayslett a

subpoena issued by this court. (Def. Ex. A).[3] That subpoena seeks 14 categories of documents (id.), discussed below. Hayslett is a public relations consultant who has performed services for Defendants PPHS and PPMH (collectively referred to as "Phoebe") on a variety of issues since 2000, including advising Phoebe on matters concerning the Factoids. (See Def. br., pp. 2-3; see also Pl. Ex. C).

On June 6, 2008, Defendants Phoebe Putney Health System, Inc., Phoebe Putney Memorial Hospital, Inc., Joel Wernick, Langley & Lee, LLC and Carl Richard Langley served objections to the subpoena served on Charles Hayslett. (Def. Ex. B).[4] Defendants objected to all of the requests as "overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence," and on the grounds that they "seek[] documents that are confidential/proprietary and documents which are protected from disclosure by the attorney-client privilege/work-product doctrine." (Id.). Defendants agreed, however, to provide "non-objectionable documents" "which pertain to the investigation of the identity of the authors of the Factoids" or which pertain to criminal prosecutions identified by indictment numbers stated in the requests, "to the extent such documents exist." (See Defs. obj. to requests nos. 1-5, 7, 9, 11-14).

These Defendants also filed the motion to quash and/or for a protective order

---

[3]The court will refer to the Hayslett subpoena as a non-party subpoena as Hayslett apparently has not been made a party to the underlying action in the Middle District of Georgia. (See Doc. 1, Objections to Third-Party Subpoena, p. 2).

[4]The parties apparently agreed to extend the time for making the objections. (See Def. br., p. 3 n.3).

-4-

pending before this court. [Doc. 1]. Plaintiff filed a response to the motion to quash [Doc. 2], and Defendants filed a reply [Doc. 3].

Hayslett has not filed a motion to quash, and it does not appear that Defendants have sought a protective order in the Middle District of Georgia where the underlying action is pending.

## Discussion

A.  **The Parties' Contentions**

   1.  **Defendants**

Defendants contend that the Hayslett subpoena should be quashed and/or that the court should enter a protective order with respect to the documents sought by the Hayslett subpoena because: 1) the subpoena seeks documents beyond the permissible scope of discovery; and 2) it seeks materials protected from disclosure by the attorney-client privilege and work product doctrine. (Def. br., pp. 9, 16). With respect to the scope of the requested documents, Defendants argue that Plaintiff's subpoena "commands the production of fourteen overly broad categories of documents," and that Plaintiff "is asking this Court to allow him to conduct a fishing expedition into the business affairs of Phoebe." (Def. br., pp. 9-10). Defendants contend that Plaintiff's requests "seek materials far beyond the subject matter of the claims in the underlying lawsuit, i.e. Defendants' investigation of the authors of the anonymous Factoids." (Def. br., p. 13). Defendants also assert that the requests are facially overbroad as they request "all" documents in each

enumerated category with no temporal or other limitation. (Def. br., p. 14).

Specifically, Defendants assert that: 1) Request Nos. 1, 2, 4, 5, 6, 9, 11, 12, 13, and 14 are "overly broad, exceed the scope of permissible discovery, and demonstrate that Plaintiff is engaging in a fishing expedition into the business of Defendants"; 2) Request Nos. 3 and 10 "are overly broad and exceed the scope of permissible discovery as all consulting agreements and contracts are not reasonably calculated to lead to the discovery of admissible evidence"; and 3) "[d]ocuments relating to other litigation, such as the 'Not for Profit Litigation[,]' are not discoverable." (Def. br., pp. 10, 14-15). Based on Defendants' objections to Plaintiff's requests (Def. Ex. B), Defendants apparently concede that Plaintiff is entitled to documents pertaining to the investigation of the identities of the authors of the Factoids and to criminal prosecutions referred to by indictment numbers stated in the requests, but they contend that Plaintiff is entitled to no additional documents.

Defendants urge this court to rule first on the permissible scope of discovery. (Def. br., p. 4). They assert that by doing so, the court may avoid having to address the privilege issue with respect to documents not relating to the investigation. (Id.).

2.  **Plaintiff**

Plaintiff does not address the specific requests at issue. Rather, Plaintiff contends generally that the requests are not overbroad, and that they do not seek irrelevant information, for several reasons. These are: 1) Defendants sent

subpoenas to non-party witnesses with language similar to Plaintiff's requests and have sought information about matters beyond this litigation in order to explore Plaintiff's claims, and therefore, Plaintiff should be able to obtain information about those matters, including Grove Pointe Indemnity, "not-for-profit litigation," and other areas; 2) Plaintiff should be able to obtain information about the truth or falsity of the Factoids because Defendants are questioning Plaintiff's motives for authoring the Factoids, and the information requested would bolster Plaintiff's claim "that he was disseminating information for the public good" and the information also "goes directly to Phoebe's motives"; and 3) the requested information is relevant to determining whether Hayslett "qualifies as an unnamed co-conspirator." (Pl. br., pp. 6-8).

**B.   Applicable Legal Standards**

Several aspects of this case combine to make resolution of Defendants' motion somewhat complicated. First, the subpoena to Hayslett was issued by this court and relates to an action pending in the Middle District of Georgia, and in which Hayslett is not a party. It is a subpoena *duces tecum*, not a subpoena *ad testificandum*. Further, as noted, the objections to the materials sought by the subpoena have been made not by Hayslett, but by certain of the defendants in the underlying action. These objections are based on attorney-client privilege and work product doctrine, grounds that are only stated and not developed, and on the scope, alleged to be overbroad and beyond the permissible scope of discovery under Rule

26, of the information requested. Defendants cite Fed. R. Civ. P. 26(c) in support of their motion for a protective order, and they invoke Fed. R. Civ. P. 45 to support their request that the subpoena be quashed or modified.

> Rule 26(c)(1) provides in pertinent part as follows:
>
> A party or any person from whom discovery is sought may move for a protective order in the court *where the action is pending* – or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

(emphasis added). By its terms, Rule 26(c) does not authorize this court to grant a protective order to address Defendants' objections to the Hayslett subpoena. This is not the court where the underlying action is pending, and the matter that is the subject of Defendants' motion does not relate to a deposition to be taken in this judicial district. Thus this court does not have jurisdiction to rule on the motion for protective order and Defendants must seek any motion under Rule 26(c) from the Middle District of Georgia where the action is pending. See, e.g., SubAir Sys., LLC v. Precisionaire Sys., Inc., No. 08-60570-CIV-Dimitrouleas/Rosenbaum, 2008 U.S. Dist. LEXIS 34578, at *9 (S.D. Fla. April 25, 2008). To the extent Defendants seek a Rule 26(c) protective order with respect to the Hayslett subpoena, their motion is therefore **denied**.

Defendants also seek relief under Fed. R. Civ. P. 45(c)(3)(A). That rule sets out the circumstances when the court that issued the subpoena must quash or modify it. It provides that quashing or modifying a subpoena is required as follows:

- 8 -

> (A) . . . On timely motion, the issuing court must quash or modify a subpoena that:
>
> > (i) fails to allow a reasonable time to comply;
> >
> > (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person – except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
> >
> > (iii) requires disclosure of privileged or other protected matter, if not exception or waiver applies; or
> >
> > (iv) subjects a person to undue burden.

The threshold issue the court must consider is whether Defendants have standing to seek to quash or modify the subpoena issued to Hayslett. "A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege, proprietary interest, or personal interest in the subpoenaed matter." Washington v. Thurgood Marshall Acad., 230 F.R.D. 18, 21 (D.D.C. 2005). See also Stevenson v. Stanley Bostich, Inc., 201 F.R.D. 551, 555 n.3 (N.D. Ga. 2001)("[I]t appears to be the general rule of the federal courts that a party has standing to challenge a subpoena when she alleges a 'personal right or privilege with respect to the materials subpoenaed.'"(quoting Brown v. Braddick, 595 F.2d 961, 967 (5th Cir. 1979))). Here, Defendants do make claims of privilege, though they do not provide a privilege log or other details about their claims, and they contend that because they "seek to protect a privilege and right with respect to the materials subpoenaed" their motion is "proper," i.e., they have standing to quash the subpoena in its

-9-

entirety. (Def. br., p.8).[5]

Whether Defendants have standing to move to quash the subpoena on the ground that it seeks materials outside the scope of discovery permitted by Fed. R. Civ. P. 26(b) is not entirely clear, however. See <u>Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.</u>, 231 F.R.D. 426, 429 (M.D. Fla. 2005)(denying plaintiff's motion to quash subpoena to non-party for depositions and production of records, based in part on grounds of relevance, oppressiveness and undue burden, with the explanation that the defendants had "fail[ed] to establish a 'personal right' regarding the records" and that "Defendants do not have standing to quash the subpoenas on the grounds of oppression and undue burden placed upon the third parties where the non-parties have not objected on those grounds" and citing to 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civil 2d § 2035 ("A party may not ask for an order to protect the rights of another party or a witness if that party or witness does not claim protection for himself, but a party may seek an order if it believes its own interest is jeopardized by discovery sought from a third person.")). Nevertheless, several cases indicate that Rule 26(b)'s limitations on the scope of discovery are essentially incorporated into Rule 45. For example, in <u>Barrington v. Mortgage IT, Inc.</u>, Case No. 07-61304-CIV-COHN/SELTZER, 2007 U.S. Dist. LEXIS 90555, at * 8 (S.D. Fla. Dec. 10, 2007), the court wrote as follows:

---

[5] On the question of Defendants' standing, Plaintiff responds rather cryptically that Defendants have provided insufficient information and "Plaintiff reserves the right to further argue lack of standing to seek to []quash the subpoena at issue as more information concerning Defendants['] reasoning is obtained." (Pl. br., p. 5 n.2).

- 10 -

> *Rule 45* does not list irrelevance or overbreadth as reasons for quashing a subpoena. Courts, however, have held that the scope of discovery under a subpoena is the same as the scope of discovery under *Rule 26*. See, e.g., *Chamberlain [v. Farmington Sav. Bank, No. 3:06CV01437 (CFD),]* 2007 U.S. Dist. LEXIS 70376, 2007 WL 2786421, at *1 [(D. Conn. Sept. 25, 2007)]* ("It is well settled that the scope of discovery under a *Rule 45* subpoena is the same as that permitted under *Rule 26*"); *Stewart [v.Mitchell Transp., No. 01-2546-JWL,]* 2002 U.S. Dist. LEXIS 12958, 2002 WL 1558210, at *3 [(D. Kan. July 11, 2002)]*(same); see also Advisory Committee Note to the 1970 Amendment of *Rule 45(d)(1)* (the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to *Rule 34* and other discovery rules."); 9A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 2459 (2d ed. 1995) (*Rule 45* subpoena incorporates the provisions of *Rules 26(b)* and *34*). The Court, therefore, must determine whether the subpoenas *duces tecum* at issue seek irrelevant information and/or are overly broad under the same standards set forth in *Rule 26(b)* and as applied to *Rule 34* requests for production.

And in <u>Transcor, Inc. v. Furney Charters, Inc.</u>, 212 F.R.D. 588 (D. Kan. 2003), the court granted in part, on relevance grounds, a motion to quash a subpoena duces tecum issued by the District of Kansas to a non-party in a case being litigated in the Middle District of Florida. The court observed:

> Fed.R.Civ.P. 45 does not include relevance as an enumerated reason for quashing a subpoena. It is well settled, however, that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34. Thus, the court must examine whether a request contained in a subpoena duces tecum is overly broad or seeking irrelevant information under the same standards set forth in Rule 26(b) and as applied to Rule 34 requests for production.

<u>Id.</u> at 591.

In this case, Defendants' objections to the subpoena based on privilege and overbreadth are intertwined. Defendants acknowledge that at least some of the

materials sought from Hayslett may not fall within the attorney-client privilege or the protection for work product, but it is the material that falls outside those protections that is also outside the permissible scope of discovery, they argue. In other words, where the privilege/work product protection ends, according to Defendants, irrelevance and overbreadth begin.

This court does not have the authority to define the scope of permissible discovery in the underlying case in general, and it will not attempt to do so. That is a matter for the judge overseeing that litigation. However, the court will attempt to carry out its role to assure that the subpoena issued by this court does not function to allow discovery beyond what would otherwise be permitted in the underlying action. Accordingly, the court will evaluate the subpoena in light of Rule 26(b)'s requirements.

C.   **Permissible Scope of the Subpoena**

Fed.R.Civ.P 26(b) provides in relevant part:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

The court agrees with Defendants that Plaintiff's requests are overly broad and appear to seek information that is not relevant to the parties' claims or defenses.

Plaintiff alleges in his amended complaint that Defendants acted unlawfully in their efforts to determine the identities of the authors of the Factoids and then retaliated against the authors, including Plaintiff, by instigating criminal investigations and prosecutions, among other things. Accordingly, information about the investigation into the identities of the authors of the Factoids is clearly relevant, as is information relating to the criminal prosecutions identified in the subpoena, as discussed below. Therefore, to the extent that Plaintiff's requests can be read to request documents that contain such information, Hayslett must produce them, if he has not already done so.

The remaining requests appear to be overbroad as they are neither limited in temporal scope nor limited to material relevant to the claims or defenses in this case. In Request Number 1, for example, Plaintiff seeks:

> **All** documents that refer, reflect or relate to Phoebe Putney Memorial Hospital, Inc., Phoebe Putney Health Systems, Inc., Grove Pointe Indemnity, Joel Wernick, Langley and Lee, LLC, Carl Richard Langley, Larry J. McCormick and Associates, LLC, Larry J. McCormick, Work Dynamics, Inc., Stephen B. Chenoweth, John Bagnato, Charles Rehlberg and Jim Bowman.

(Def. Ex. A) (emphasis added).[6] The request contains no temporal limitation, and Plaintiff has not shown how such a broad, all-encompassing request seeks only documents relevant to the claims and defenses in this case. Defendants assert, and Plaintiff has not refuted, that Hayslett has worked for Defendants since 2000 on a

---

[6]Request Number 5 is identical to Request Number 1. (Def. Ex. A).

- 13 -

variety of issues that go beyond the events of this lawsuit. (See Def. br., pp. 2-3). Yet Plaintiff has not shown how documents relating to Hayslett's work on issues or events beyond those set forth in the complaint are relevant to the claims or defenses in this case.

With the exception of Request Number 7, Plaintiff's remaining requests suffer from the same defects, i.e., they are not limited in temporal scope and they request documents that do not appear to be relevant to the claims or defenses in this case. For example, Request Number 2 seeks "[a]ll documents evidencing, reflecting, referring or relating to any conversation, communication or correspondence between [Hayslett] and Phoebe Putney Memorial Hospital [and the other persons and entities listed in Request Number 1]." Request Number 3 seeks all documents concerning any engagement or consulting agreement between Hayslett and the defendants named in this litigation. Request Number 4 seeks all documents "received from or provided to" the named defendants. Request Number 6 seeks all documents concerning any investigation and "any public relations plan or strategy" relating to PPMH and PPHS. Requests Number 9-14 seek documents concerning "the Criminal Prosecution" (discussed below) and this litigation, documents which appear to be relevant to the claims or defenses in this case. However, these requests also seek documents relating to:

> Phoebe Putney Memorial Hospital, Inc., Phoebe Putney Health Systems, Inc., Joel Wernick, Langley and Lee, LLC, Carl Richard Langley, Larry J. McCormick and Associates, LLC, Larry J. McCormick, Work Dynamics, Inc., Stephen B. Chenoweth, Barrett Law Office, Brown &

- 14 -

>Scoccimaro, Scruggs Law Firm, Bobby Lee Cook, Kindling Group, ABC, Peter Halmos, Taylor & Ives, and any investigator and/or consultant and/or broadcast or print media entity.

(See Hayslett Subpoena, Request Numbers 9-14). Because these requests are not limited in temporal scope, and are not limited to the claims or defenses in this case, they are overly broad.

Request Number 7 appears to be properly limited in scope in that it requests "[a]ll documents that refer, reflect or relate to the Criminal Prosecution," which is defined as "the criminal prosecution of John Bagnato, Charles Rehberg, and Jim Bowman, both individually and collectively, in the Superior Court of Dougherty County, Georgia, pursuant to Bill of Indictment numbers 05-R-1253, 06-R-121, and/or 06-R183." (See Subpoena, Instructions and Definitions Number 12).

Plaintiff advances several arguments in an effort to expand the permissible scope of discovery, but the court finds these arguments unpersuasive. First, Plaintiff argues that Defendants sent subpoenas to non-party witnesses with similar language, and Defendants requested information about matters beyond this litigation. (Pl. br., pp. 6-7). However, these arguments do not show how Plaintiff's subpoena requests are relevant to the claims or defenses in this case. If Defendants sent out overly broad requests, the recipients of those requests had the opportunity to challenge the requests and seek to narrow them, as Defendants have done in responding to Plaintiff's requests.

Second, Plaintiff asserts that he should be able to discover the requested

documents because the truth or falsity of the Factoids is relevant to Plaintiff's motives, which Defendants are questioning, and because the requested information "goes directly to Phoebe's motives." (Pl. br., pp. 7-8). Given that there is no claim or counter-claim in this case for defamation or slander, the court finds that Plaintiff has not shown the truth or falsity of the Factoids to be at issue, so as to justify a broad inquiry into all of Phoebe's affairs that would be disclosed by Hayslett's records about Phoebe. Plaintiff has asserted that Defendants acted wrongfully in their investigation of the authors of the Factoids and by retaliating against them, claims that do not appear to rely on the truth or falsity of the Factoids. Furthermore, other than his bald assertion that the information requested "goes to Phoebe's motives," Plaintiff has not shown how information relating to Haylett's advice to Phoebe on issues unrelated to the complained-of investigation and criminal prosecution is relevant to Phoebe's motives with respect to the investigation and prosecutions.

Finally, with respect to Plaintiff's assertion that the requested information is relevant to whether Hayslett "qualifies as an unnamed co-conspirator" (Pl. br., pp. 7-8), the court finds that Plaintiff has not explained how information unrelated to the investigation into the Factoids and the criminal prosecution would shed light on whether Hayslett "qualified as an unnamed co-conspirator." Information concerning the investigation into the Factoids and related activity, such as the criminal prosecution or litigation against persons involved in authoring the Factoids, should

sufficiently indicate Hayslett's involvement in those activities.

The court notes that the parties have made many factual representations in their briefs about the parties, their motives, other incidents not described in the complaint, etc., which they do not support with citation to record evidence. (See, e.g., Def. br., pp. 5, 15; Pl. br., pp. 2-4, 8; Reply, pp. 8-9 n. 4). The court's finding, that the proper scope of the Hayslett subpoena includes only documents concerning the investigation into the identities of the authors of the Factoids and documents concerning the criminal prosecution identified in the subpoena, is based on the limited information made a part of the record by the parties.

Furthermore, this court's order is limited to the subpoena that was issued by this court. It should not be construed as a general ruling on the permissible scope of discovery in the underlying case. If either party believes that the scope of discovery should be modified, then that party should apply to the District Judge to whom this case is assigned in the Middle District of Georgia, who has broad authority to manage discovery in that case, and is in a far better position than this court to determine its appropriate scope.

Accordingly, Defendants' motion to quash the Hayslett Subpoena is **GRANTED in part and DENIED in part**. To the extent that Plaintiff's subpoena seeks documents not related to the investigation of the Factoids and the criminal prosecution identified by the subpoena, Defendants' motion to quash is **GRANTED**. Charles Hayslett is **DIRECTED** to provide to Plaintiff and Defendants a copy of all

documents in his possession or control relating to Defendants' investigation of the Factoids, including the investigation into the identities of the authors of the Factoids, and any documents concerning the criminal prosecution identified in the subpoena, **no later than December 1, 2008**.[7]

### D. Privilege/Work Product Doctrine

While Defendants have argued privilege and work product protection as grounds for their motion, they have also asserted that "[i]f the Court agrees with Defendants and finds that discovery should be limited to the investigation into the identity of the authors of the Factoids, then there is no need to address the privilege issue as those documents would not be discoverable." (Def. br., pp. 16-17). Accordingly, the court does not reach the issue whether the documents Hayslett is directed to produce are protected by privilege or the work product doctrine as Defendants do not appear to argue that those documents would be protected from disclosure.

### Summary

Certain Defendants' Motion to Quash Third-Party Subpoena Issued to Charles Hayslett [Doc. 1] is **GRANTED in part and DENIED in part**. Certain Defendants' Motion for Protective Order [Doc. 1] is **DENIED**. The Clerk is **DIRECTED** to

---

[7] In September 2007, Plaintiff obtained from Defendants copies of some communications between Hayslett and representatives of Phoebe (see Pl. br., p. 4; Pl. Ex. C). However, it is not clear that Plaintiff has obtained all documents responsive to the subpoena that fall within the permissible scope of the subpoena, as found by the undersigned.

terminate the reference of this matter to the undersigned.

**IT IS SO ORDERED** this 13th day of November, 2008.

*Susan S. Cole*
SUSAN S. COLE
United States Magistrate Judge